IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:16-CR-82 |
| v. : | |
| : | |
| MATTHEW FENSLER : | (Electronically Filed) |

# DEFENDANT, MATTHEW FENSLER'S, SENTENCING MEMORANDUM

Defendant, Matthew Fensler, by his attorney, Andrew D. Kessler, Esquire, files this Sentencing Memorandum. The Defendant has plead guilty to an information pursuant to a written plea agreement and his sentencing is presently scheduled for July 26, 2017 at 10:00 am in Harrisburg, Pennsylvania. For the reasons set forth in this Memorandum, Defendant, Matthew Fensler respectfully requests that this court carefully evaluate all the relevant circumstances and formulate a sentence which satisfies the need for punishment while also considers all the circumstances surrounding the facts of this case.

## I. INTRODUCTION

On March 30, 2016, an indictment was filed charging Defendant, Matthew Fensler, with a series of crimes, all of which involved child pornography. On May 11, 2016, a more specific Superseding Indictment was filed. Ultimately, on December 7, 2016, a Plea Agreement was submitted to the Court in which Matthew Fensler pleaded guilty to Count 10 of the Superseding Indictment, a violation of Title 18, United States

Code, § 2251(a) and Count 13 of the Same Indictment, a violation of Title 18, § 2251(e). Those counts are titled "Criminal Conspiracy to Produce Child Pornography" and "Criminal Conspiracy to Publish a Notice or Advertisement Seeking Child Pornography", respectively.

## II. FACTS

Mr. Fensler has acknowledged his actions in his plea agreement, filed a Factual Basis and in a recorded statement while being polygraphed on the date of his arrest. There is no question that he was in the virtual room electronically or that he made statements over a short period which either showed his appreciation for what he had seen occurring in the room, the subject matter and suggesting "smacking him around a couple of times." There was a subsequent suggestion to live stream the victim, comments inquiring as to the victim's appearance as well as a request for other pre-recorded videos to be played.

## III. SENTENCING GUIDELINES

### A. Maximum Penalties

The maximum penalty for Count 10 is imprisonment for a period of 30 years, a fine of $ 250,000.00, up to lifetime supervised release to be determined by the court, which shall be served at the conclusion of, in addition to, any term of imprisonment, as well as the costs of prosecution, imprisonment, probation, or supervised release, denial of certain federal benefits, forfeiture, and an assessment in the amount of $100 as well as an assessment of $5,000.00

The maximum penalty for Count 13 is imprisonment for a period of 30 years, a fine of $ 250,000.00, up to lifetime supervised release to be determined by the court, which shall be served at the conclusion of, in addition to, any term of imprisonment, as

well as the costs of prosecution, imprisonment, probation, or supervised release, denial of certain federal benefits, forfeiture, and an assessment in the amount of $100 as well as an assessment of $5,000.00

### B. Calculation of Total Offense Level

Mr. Fensler does not dispute the computation of the total offense level made by the United States Probation Office, which corresponds to the stipulations of the parties contained in the plea agreement. The Base Offense Level, using USSG §3D1.2(b) yields a 32, plus an enhancement of +4 because the offense involves a minor not 12 years of age. Because the offense involved the commission of a sexual act and conduct described in 18 USC § 2241 (a) or (b), pursuant to 18 USC §2G2.1(b)(4), there is another enhancement of +4. Additionally, because the offense involves material that portrays sadistic or masochistic conduct or other depictions of violence, another +4 increase is applicable. Finally, because of Mr. Fensler's acceptance of responsibility, his plea of guilty, acceptance and signature of the factual basis that was placed on the record, he has clearly demonstrated acceptance of responsibility for his role in the offense. Additionally, he assisted in the investigation or prosecution of his own misconduct. Accordingly, the offense level is decreased by -3. USSG§3E1(a) and (b). The above computation leaves us with Total Offense level of 43.

### C. Other Factors

Currently, the court is empowered to consider significantly more than the sentencing guidelines when determining an appropriate punishment, especially given the history of the guidelines in cases such as this one. No limitation should be placed on the

information concerning the background, character and conduct of a person convicted of an offense which a Court of United States may receive and consider for the purpose of imposing an appropriate sentence. 18 U.S.C.A. §3661. The factors that should be considered when determining a sentence are the nature and circumstances of the offense and history and characteristics of the defendant, 18 U.S.C.A. §3553(a) and the need for the sentence imposed. 18 U.S.C.A. §3553(a)(2).

The issue of disparate guidelines applications, specifically in child pornography cases, has been seen before and addressed many times by our appellate courts. In U.S. v. Hanson 561 F.Supp.2d 1004 (E.D. Wisc. 2008) (in a possession of child pornography case where the guidelines were 210-262 months, the court imposed a sentence of 72 months, in part because the guideline range was "far greater than necessary to protect the public and deter defendant from re-offending." Similarly, in U.S. v. Cherry, 487 F.3d 366 (6th Cir. 2007) where defendant was convicted of possessing child pornography and guideline range was 210-262 months, a sentence of 120 months (43% variance from guidelines) was proper, rejecting the government's argument that the sentence violated Congressional will, as expressed in guidelines, because such an argument "would give too little effect to the parsimony provision of §3553(a)—that the district court shall impose a sentence 'sufficient, but not greater than necessary' to comply with §3553(a)(2)").

The courts addressed the basis of the guidelines in U.S. v. Johnson 588 F.Supp.2d 997 (S.D. Iowa 2008) (in child pornography case where guidelines were 121-151 months, the court imposed sentence of 84 months in part because the Sentencing Commission's increase in the offense level for child pornography crimes "do not appear to be based on

any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses." Thus, "because the guidelines at issue in this case do not reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research, and data, this Court, as it did in *United States v. Shipley*, "affords them less deference than it would to empirically-grounded guidelines." 560 F. Supp. 2d 739, 745-46 (S.D. Iowa 2008); *see also Kimbrough*, 128 S. Ct. at 574 (noting that guideline ranges created when the Commission departed from past practices are a less reliable appraisal of a fair sentence") The district court's sentencing discretion includes the option to vary from the guidelines "based on a *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." Spears v. U.S., 555 U.S. 261, 264 (2009); Kimbrough v. U.S., 552 U.S. 85 (2007) ("The Government acknowledges that the Guidelines are now advisory and that, as a general matter, 'courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines'"); **U.S. v. Price**, 775 F.3d 828 (7th Cir. 2014) (even where defendant convicted after trial and showed no remorse for producing and distributing pornography, and even though he molested children and was a future danger, where guidelines recommend 40 years, it was not abuse to sentence defendant to 18 years because of policy difference with guidelines and because of multiple enhancements); **United States v. Henderson**, 649 F.3d 955, 963 (9th Cir. 2011) (holding "district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case.");

**United States v. Tutty**, 612 F.3d 128, 131 (2d Cir. 2010) ("[A] district court may depart from the Guidelines based solely on a policy disagreement.") (emphasis in original); **United States v. Corner**, 598 F.3d 411, 415 (7th Cir. 2010) (en banc) ("We understand *Kimbrough* and *Spears* to mean that district judges are at liberty to reject *any* Guideline on policy grounds – though they must act reasonably when using that power."); **U.S. v. Engle**, 592 F.3d 495, 502 (4th Cir. 2010) ("[D]istrict courts may 'vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines'"); *United States v. Rodriguez*, 527 F.3d 221, 227 (1st Cir. 2008) ("[*Kimbrough*] makes plain that a sentencing court can deviate from the guidelines based on general policy considerations."). Clearly, based upon the forgoing, this Court has the ability, if it so chooses, to sentence what it wishes, given the individual facts of a case and/or the Court's feelings about the statute. Setting aside policy considerations and disagreement with a statute, the guidelines (and their subsequent computations) have been found to lack empirical foundations, both as set forth above and as follows: In **Henderson** (case remanded for district court to consider whether it disagrees with pornography guidelines because "similar to the crack cocaine Guidelines, district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case" in part because "the child pornography Guidelines are, to a large extent, not the result of the Commission's "exercise of its characteristic institutional role,"); *Id.* (**Berzon, J., concurring**) (" I write only to emphasize that unjust and sometimes bizarre results will follow if § 2G2.2 is applied by district courts without a special awareness of the Guideline's anomalous history."); **U.S.**

v. Grober, 624 F.3d 592 (3d Cir. 2010) (where guidelines in child pornography case were 234-293 months, district court did not err in granting variance to mandatory minimum of 60 months given then pornography guidelines too severe and based on empirical studies); U.S. v. Dorvee 616 F.3d 174 (2d Cir. 2010) (where defendant pled guilty to distribution of pornography, sentence of 240 months vacated as unreasonable in part because "the Commission did not use this empirical approach in formulating the Guidelines…[and] often openly opposed these Congressionally directed [increases]… The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases."

This is **EXACTLY** what is happening in the instant case. The statutes each have 30 year maximums. The guidelines, once enhancements have been applied, recommend more than the maximums, without taking into considerations anything about the defendant, or the facts of the case. In fact, only the Defendant's cooperation brings the guidelines down to the maximum. The potential inequities of the guidelines application can be summed up in the following statement from the **Dorvee Court**. "The irony of the court's conclusion in this area is that the Guidelines actually punish some forms of direct sexual contact with minors *more leniently* than possession or distribution of child pornography."); US v. Tutty, 612 F.3d 128 (2d Cir. 2010) (where Defendant pleaded guilty to one count of receiving child pornography and sentenced to 168 months, sentence vacated in part because district court erred "when it held, relying on outdated law, that it did not have the authority to impose a non-Guideline sentence based on policy considerations applicable to all defendants. Moreover, as we recently recognized in

*United States v. Dorvee*, 604 F.3d 84 (2d Cir. 2010), the child pornography Guidelines present important policy considerations, and unless they are "carefully applied," they "can easily generate unreasonable results.") The situation where multiple enhancements for pornography that are similar yield guidelines results that are too hard has been addressed in **U.S v. Price**, 775 F.3d 828 (7th Cir. 2014) (even where defendant convicted after trial and showed no remorse for producing and distributing pornography, and even though he molested children and was future danger, where guidelines recommend 40 years, no abuse to sentence defendant to 18 years because of policy difference with guidelines and because of multiple enhancements); **U.S. v. Dorvee** 604 F.3d 84 (2d Cir. 2010) (where defendant pled guilty to distribution of pornography sentence of 240 months vacated as unreasonable in part because of multiple enhancements that apply in almost all cases: "worth noting that 96.6% of defendants received at least a two-level enhancement based on the number of images possessed. On top of that, many of the § 2G2.2 enhancements apply in nearly all cases. Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved a computer (qualifying for a two-level increase pursuant to § 2G2.2(b)(6)), 73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement pursuant to § 2G2.2(b)(4)), and 63.1% involved 600 or more images (qualifying for a five-level enhancement pursuant to § 2G2.2(b)(7)(D)). In sum these enhancements, which apply to the vast majority of defendants sentenced under § 2G2.2, add up to 13 levels, resulting in a typical total offense level of 35); .**U.S. v. Grossman**, 513 F.3d 592 (6th Cir. 2008) (in case of possession of child pornography where guidelines

were 135-168 months, district court's variance to 66 months and 10 years' supervised release was proper in part because district court perceived that multiple enhancements [images of prepubescent minors, distributing for value, use of computer, etc.] were for similar activity that "improperly exaggerated the guidelines" and created punishment greater than necessary. Enhancements that "*almost* repeat one another...speaks not to a problem of double counting but to a perception that the guidelines sentence is higher than this conduct deserves—a concern that *Booker* aptly allows a court to consider in applying *advisory* guidelines."); "); <u>U.S. v. Parris</u> 573 F.Supp.2d 744 (E.D.N.Y. 2008) (in securities fraud case where guidelines were 360 months to life, court imposed 60 months sentence because it believed guideline range irrational: "Fortunately, thanks to the Supreme Court, district courts are now "allowed to impose a sentence that varies from the Guidelines based solely on . . . disagreements with the Guidelines," as long as they "state the basis for [their] disagreement along with 'sufficient justifications' for 'the extent of any departure.'" *U.S. v. Cutler*, 520 F.3d 136, 163 (2nd Cir. 2008)(quoting *Gall*, 552 U.S. 38 (2007));

    Mr. Fensler has never had contact with the judicial system, as this is his first accusation, not only his first conviction. He is a first-time offender with absolutely no criminal history. Obviously, the guidelines, prior to addressing §3553 (a) issues, recommends a lengthy period of incarceration. This issue has been addressed many times before, not only at the District Court level but on appeal as well. See <u>U.S. v. Huckins</u> (10th Cir. 2008) 529 F.3d 1312 (where Defendant convicted of possession of child pornography and guidelines were 78-97 months, it was determined that the Court's variance to 24 months was proper in part because this was defendant's first conviction --

rejecting government's argument that guidelines already considered this by placing defendant in Criminal Category I. "although the Guidelines discourage granting a downward departure based upon criminal history when the defendant has been placed in a criminal history category of I, the Court determined, after **Gall** and **Kimbrough**, a factor's disfavor by the Guidelines no longer excludes it from consideration under § 3553(a).... Therefore, a district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis." Likewise, in **U.S. v. Hanson** 561 F.Supp.2d 1004 (E.D. Wisc. 2008) (in possession of child pornography case where guidelines were 210-262 months, the court imposed a sentence of 72 months in part because he was 49 years of age and "had no prior record whatsoever" and "he had never before been to jail for even one day."

Applying the calculated guidelines sentence in this case would likewise be akin to a life sentence. Statistically, in the United States, the life expectancy for a male is 79 years of age. (United States Census Bureau). This fact was addressed in **U.S. v. Lee**, 725 F.3d 1159 (9th Cir. 2013) (where 72-year old woman convicted of distributing methamphetamine and given 96 months, which was below mandatory minimum because of cooperation, case remanded so district court "should give more serious consideration to whether to impose" such a sentence "that effectively condemns a 72 year old woman who provided extensive assistance to the government to death in prison for an offense of the nature involved." ).

Defendant recognizes the mandatory minimum in this case, but also recognizes the need for ongoing treatment upon his eventual release. Prior to his arrest, after his

visit to the virtual room where the crime was committed, Mr. Fensler sought treatment from the following providers:

*Northlight Counseling Associates, Inc*
James Hicks, psychiatrist,
2633 E. Indian School Rd
Phoenix, AZ 85016
602-285-9696
Fax: 602-277-5930

Gina Metroff, LPC, Therapist,
5050 N. 8th Place
Phx, AZ 85014
602-285-9696
Fax 602-277-5930

*OCD Spectrum Clinic*
Dr. Michael Zatkowsky,
11270 N. 129th Way
Scottsdale, AZ 85259
480-451-4000

*Valley Psych Associates, LLC*
Maryanna H. Foley, Ph.d., PMH N.P.
5080 North 40th Street
Phx, AZ 85018
602-840-9621
Fax: 602-840-3480

It is expected that immediately after being released from custody after incarceration, Mr. Fensler will seek ongoing treatment and counseling. To that end, defendant ask that the court consider the following:

Regardless of the type of crime, empirical studies show there is no relationship between sentence length and general or specific deterrence. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A review of Research 28–29 (2006); David Weisburd *et al.*, *Specific Deterrence in a Sample of*

*Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (all concluding there is no correlation between sentence length and crime rates).

Furthermore, according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al.*, *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S–51S (2011).

At the same time, courts across the country are recognizing the value—to the defendant and the public—of treatment instead of incarceration. Courts are acknowledging that for certain offenders, probation or home detention with cognitive treatment is the appropriate sentence. *E.g.*, *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (where defendant convicted of possession of child pornography and guidelines called for 33–40 months prison, district court's sentence to probation reasonable in part because of district court's "strong emphasis on [defendant's] general need for treatment").

Finally, Mr. Fensler asks that the court consider the totality of the circumstances which exist. Mr. Fensler has been free of legal problems for his entire life, recently graduated from college and had begun employment at Arizona State University, while seeking counseling as set forth above. He had long since abandoned entering the virtual application room and had begun to move on in life as a productive member of society when he was arrested. Without question, he knows his conduct those days was wrong and that there is a price to be paid for that. He asks that this Honorable Court consider

the above facts and application of §3553 factors in fashioning his sentence when he appears before the Court for sentencing. In support thereof, attached as part of this Memorandum are individual letters sent in support of Mr. Fensler.

Respectfully submitted:

Date: July 19, 2017

/s/Andrew D. Kessler
Andrew D. Kessler, Esquire
Attorney ID# 59713
Suite 400
101 Greenwood Ave
Jenkintown, PA 19046
Voice: 215.935.1151
Fax: 215.935.0326
e-mail: akessler@andrewkesslerlaw.com
Attorney for Matthew Fensler

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 1:16-CR-82 |
| v. | : | |
| | : | |
| MATTHEW FENSLER | : | (Electronically Filed) |

## CERTIFICATE OF SERVICE

I, Andrew D. Kessler, Esquire, do hereby certify that on this date I served a copy of the **DEFENDANT'S PRESENTENCE MEMORANDUM**, via Electronic Case Filing, addressed to the following:

Meredith Taylor, AUSA            Meredith.Taylor@usdoj.gov
Austin Berry, AUSA               austin.berry@usdoj.gov


Date: July 19, 2017              /s/Andrew D. Kessler
                                 Andrew D. Kessler, Esquire
                                 Attorney ID# 59713
                                 Suite 400
                                 101 Greenwood Ave
                                 Jenkintown, PA 19046
                                 Voice: 215.935.1151
                                 Fax: 215.935.0326
                                 e-mail: akessler@andrewkesslerlaw.com
                                 Attorney for Matthew Fensler

July 8, 2017

Honorable Yvette Kane
United States District Court
Middle District of Pennsylvania.

Dear Honorable Yvette Kane,

I am Elisabeth Fensler, and am Matthew Stephen Fensler's, Mom. I work at the Phoenix Public Library as a Library Attendant, since January 2016, before, I worked 19 years at John F. Long Elementary School as an Administrative Assistant. Blake Fensler, Matthew's Dad and I have been married for 29 ½ years. We together have raised our three sons in a kind, loving, and grace filled, supportive Christian home. Matthew also grew up with two Grandmothers, Rosemary Fensler and Petra Gonzales, and one Grandfather, Henry Gonzales.

I have seen Matthew be extremely kind, thoughtful and loving, and well regarded among his peers. He has a good and humble heart and puts others before himself. Matthew was a reliable and highly liked worker at the Maryvale Hospital when he volunteered there. He also is a hard-working and dependable employee at prior job positions including his current job with Arizona State University.

Matthew has a productive future ahead of him and will make use of his BS Degree from the Arizona State University. God willing when he returns home, he will attend ASU and complete his Masters Degree in Business and can better assist his family, friends and community by becoming a more responsible and productive citizen.

I have seen positive changes in Matthew's life since he got in trouble which are clearly evident in his calls, letters and cards that we receive. Matthew certainly understands that he has done wrong and expresses regrets at his actions. He is learning from this experience and wants to move forward with his life, which we will dedicate to supporting Matthew through his complete rehabilitation.

Our entire family misses him so much, we are incomplete without him.

I hope that you will give an opportunity for a second chance to Matthew while you make a fair decision.

Thank you for considering this request for leniency.

Respectfully,

Elisabeth Fensler
2217 East Amelia Ave
Phoenix, Arizona 85016
623-570-6199

July 8, 2017

Honorable Yvette Kane
United States District Court
Middle District of Pennsylvania

Dear Honorable Yvette Kane,

My name is Blake Fensler, I am Matthew's Dad. I am 51 years old and I work for the City of Phoenix Police Department as a Fingerprint Technician since November 2000. I am writing to you today to plead for leniency and to show compassion upon Matthew's sentencing.

My son, Matthew, has always been a very studious person. When he was in grade school he was always such a hard worker and his grades reflected that. He was an honors student early on all the way through high school. When he was 17 he attended the Arizona Biosphere for 2-3 weeks. It is run by the U of A and is a Science Research Facility where Matthew performed various water experiments. In 2015 Matthew graduated from ASU with a Bachelor's Degree in Entrepreneur. Matthew has always been a very ambitious person who accepts any task and performs it with great efficiency. Matthew is also a very compassionate person, when his Grandma Rosemary died in 2014 he took it upon himself to write and present the Eulogy at the funeral, he also created the slide show of my mom's life story. It was so well done and professional it brought tears to all the family that night, his Grandma would have been so proud of him and looking down she probably was.

I know that Matthew has done wrong and so does he. He has elected to stay in prison for what he did and forfeit any bail. He feels so remorseful and would like to make things better for himself by being home with his family. We miss him terribly, especially his little brother Nathan. This is his first ever offense of any kind, I really hope that he can have a second chance to be a better person. Thank you for your time.

Sincerely,

*Blake Fensler*

Blake Fensler
2217 E. Amelia
Phoenix, Arizona   85016
480-225-2819

July 10, 2017

Honorable Yvette Kane
United States District Court
Middle District of Pennsylvania

Dear Honorable Yvette Kane,

Hello, I am writing about Matthew Fensler who is appearing in your courtroom on July 26, 2017.

My name is Nathan Fensler and I am Matthew's brother. I am 12 years old and I am in the 7th grade this year at Madison #1 Middle School.

Matthew is a good person with a respectful and polite attitude. I have known Matthew for 12 years, my whole life and in this time, I've seen him be a good, kind, loving and very funny brother. I do believe that he is a good-hearted person.

I miss my brother and I want him back home because he is very helpful and helps me with my homework. Also, him and I watch TV together, Sci-Fi shows mainly and talk about video games and do fun stuff.

When I was 4 years old we all went to the San Diego Zoo. We were at the San Diego Zoo when I got lost, my Mom and Dad told me later that Matthew raced as fast as he could back to where I was last seen. He saw me and ran over to me and picked me up and gave me a big, big hug and then we went back to my Mom and Dad, I was so happy to see them. I feel that Matthew saved me.

My brother Matthew has made many mistakes and is very sorry for what he did, all he needs is a second chance. So please send my brother Matthew home because me and my family really truly miss him, need him and he means so much to me.

Thank you,

Nathan Fensler

Nathan Fensler
2217 E. Amelia
Phoenix, AZ 85016

July 10, 2017

Honorable Yvette Kane
United States District Court
Middle District of Pennsylvania

Dear Honorable Yvette Kane,

Hello, my name is Michael Fensler, I am the older brother to Matthew Fensler. I am 29 years old, I currently work for AJ's Wholesale Auto Parts as a Parts Courier and Warehouse Clerk.

My brother Matthew is a kindhearted, loving and respectful person. I have known him for as long as I can remember and we've always been good to each other, as good as brothers can be that are 3 ½ years apart. He would help me out sometimes with homework, especially Math which Matthew knows so well. Matthew will always help a person in need, especially older folks who can't get around that well. That's when you can really see his loving heart shine thru, it's amazing.

Myself and my family deeply miss him a lot. Talking with him over the phone when he calls from Jail is a big treat for me, we talk about the latest video game coming out in the magazine or the next Marvel movie. I sure miss him for all that stuff and a lot more-he's like my buddy, we have a lot in common. Whenever we got into any binds we worked them out together to solve it, and yes, he was usually the problem solver. He's a one of a kind brother that I really miss. When we do talk on the phone I can tell in his voice that he has become a better person, very tolerant and humble, doesn't complain about anything.

We all know that we can make mistakes, small and big ones. I know Matthew is ready for a second chance and he is so sorry for what he did. Please have mercy on him.

Thank you for your time and consideration.

Respectfully,

*[signature]*

Michael Fensler
2217 E. Amelia
Phoenix, Arizona 85016

July 10, 2017

Honorable Yvette Kane
United Sates District Court
Middle district of Pennsylvania

Dear Honorable Yvette Kane,

We, Petra Gonzales and Henry Gonzales, are Matthew Fensler's Grandparents, we reside at 2218 East Amelia, Phoenix, AZ 85016, for almost 51 years. We have known Matthew all of his life. He is a very intelligent, loving, and thoughtful young man. Matthew lived at our home for 3 years and he was always very kind, courteous and considerate of all those around him. He excelled in his academics throughout school, grade school, high school, and college, maintaining an A-grade average. He also obtained scholarships and grants to pay for his college studies.

Matthew was selected to represent Arizona at the League of United Latin American Citizens (LULAC) National Conference in Washington, D.C. his senior year in high school. He spent a week in Washington and upon his return he presented a very informative report and slide show of his entire trip.

Matthew has been terribly missed by his family and we are looking forward to having him among us again. Our lives have been placed on hold and until his return to our family.

Matthew errored terribly and knows that it impacts his life and his family. The entire family is supportive of him and we all know that he will make amends for his mistake, and move forward from this.

As his Grandmother and Grandfather, we plead for your favorable consideration for him to be returned home. Thank you in advance for your consideration for Matthew. If you need additional information, please contact us at 602-955-2125.

Sincerely,

Petra Gonzales and Henry Gonzales