<pre>
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2
   UNITED STATES OF AMERICA        :
 3                                 :  Case Nos. 1:16-CR-082
                                   :   and 1:17-CR-072
 4            vs.                  :
                                   :  (Judge Kane)
 5   FRANKLYN BENJAMIN MOLINA,     :
                     Defendant     :
 6

 7             TRANSCRIPT OF SENTENCING PROCEEDINGS
               BEFORE THE HONORABLE YVETTE KANE
 8             UNITED STATES DISTRICT COURT JUDGE
                SEPTEMBER 20, 2017; 10:00 A.M.
 9                 HARRISBURG, PENNSYLVANIA

10
   FOR THE GOVERNMENT:
11
       Meredith A. Taylor, Assistant United States Attorney
12     United States Attorney's Office
       228 Walnut Street, Second Floor
13     Harrisburg, PA  17101

14   FOR THE DEFENDANT:

15     John A. Abom, Esquire
       Abom & Kutulakis
16     2 West High Street
       Carlisle, PA  17013
17
   ALSO PRESENT:
18
       Crystal Bard, United States Probation Officer
19

20

21                     Lori A. Shuey
             Federal Certified Realtime Reporter
22                United States Courthouse
             228 Walnut Street, P.O. Box 983
23              Harrisburg, PA  17108-0983
                     717-215-1270
24            lori_shuey@pamd.uscourts.gov
    Proceedings recorded by mechanical stenography; transcript
25          produced by computer-aided transcription.
</pre>

1          *MS. TAYLOR:*  Your Honor, this is the case of *United*

2     *States of America v. Franklyn Molina*, this court's docket

3     1:16-CR-82 and 1:17-CR-72.  Mr. Molina is present represented

4     by Mr. Abom, and we are here today for Mr. Molina's sentencing.

5          *THE COURT:*  All right.  Mr. Abom, good morning.

6          *MR. ABOM:*  Good morning, Your Honor.

7          *THE COURT:*  I'm sure you've seen the presentence

8     report, which contains a guideline calculation of 180 to 210

9     months based on the statutory minimum.  The offense level has

10    been calculated at 34 and a criminal history category two.

11         *MR. ABOM:*  We have seen it.  I have reviewed it with

12    Mr. Molina, addressed any concerns or issues he has had, and we

13    have not set forth any objections to the calculation and

14    sentencing range.

15         *THE COURT:*  Is there anything you want to offer on

16    your client's behalf?

17         *MR. ABOM:*  Very briefly.  And I do note that

18    Mr. Molina has prepared a statement that he would like to read

19    to the court.

20         And just in summary, Mr. Molina, I think, has been

21    suffering himself from being a victim of a sexual offense, and

22    I don't think he necessarily has addressed all of the issues

23    that need to be addressed.

24         We recognize he had a prior offense while he was in

25    the Navy for which he did time, and now we have these two

1    offenses for which I believe the court will be sentencing.

2           The more serious of the two is a 15-year mandatory,

3    and so it sets a floor of an appropriate sentencing range of

4    180 months.  There is another offense that carries a five-year

5    sentence, a five-year mandatory sentence, I believe.  And we're

6    respectfully requesting the court impose those two sentences

7    concurrently and to impose a sentencing -- a guideline sentence

8    of 180 months.

9           He does -- in terms of a location, he doesn't have a

10   specific location but does ask the court to request to the

11   Bureau of Prisons that he be sent to a facility that would

12   offer both mental health treatment and also sexual offender

13   treatment.  And while I think that's likely to happen, perhaps

14   a suggestion from the court --

15          *THE COURT:*  Sure.

16          *MR. ABOM:*  -- would help ensure that that does take

17   place.  That's all I have.

18          *THE COURT:*  Thank you.  Do you wish to speak?

19          *THE DEFENDANT:*  Yes, Your Honor.  I have a statement

20   that I've prepared.

21          *THE COURT:*  All right.

22          *THE DEFENDANT:*  Your Honor, first I feel I must begin

23   by apologizing to the people I've hurt in my actions and my

24   irresponsible behavior.  I -- excuse me.  I never meant for any

25   of this to happen.  I'm not excusing any of my actions, but I

1    feel at the very least I must explain myself.

2          I had sought this material because I was still

3    suffering from problems stemming from my past.  As a child, I

4    had suffered from sexual molestation which had affected me far

5    too greatly.  I had sought to relive my experience by once

6    again engaging in this inappropriate behavior.

7          I feel the shame from my reoffending because I didn't

8    continue to seek help on my past trauma.  I thought I could

9    handle it on my own, but I was more than wrong.  As a result, I

10   wound up hurting both myself and others who have been affected

11   by this sickness and depravity.

12         I admit that I do have a problem.  All I want is help

13   for what I have done so I can return to society a better person

14   and do everything I can to help those who were victimized by

15   this experience.

16         I want to do everything I can just to make everything

17   right again.  Even after I serve my time, I still want to

18   continue my therapy and counseling so this doesn't happen

19   again.  I'm just sick and tired of giving into the sorrow.

20         While serving time at Adams County Prison, I have

21   learned a great deal from the programs offered, as well as the

22   mental health counselor, Ms. Jen Tucker.  She has been

23   immensely helpful in my treatment and my situation.

24         And my counselor, my former counselor, Mr. Lyons, who

25   is now at York County, he has helped me learn how to control my

1   problems and avoid bad behavior and poor choices, such as

2   learning about things like ambivalence, for example.

3          It has also further helped me with the anger

4   management course and control therapy groups, just doing all

5   that I can to help myself and to stop hurting others, stop

6   reoffending, and to become a productive man again.

7          I could beat this problem as long as I have -- as long

8   as I have the people I love and care for support me, as they

9   always have, and continue my treatment.

10          I have faith in the Lord Jesus Christ that He will see

11   me through this and to help others who have suffered through

12   this abuse.  I beg the court to consider this when giving a

13   sentence.

14          And, finally, I close out my statement with Psalm 32:

15   When I kept silence, my bones waxed old through my roaring all

16   the day long.  I acknowledged my sin unto you and my iniquity

17   have I not hid.  As I said, I will confess my transgressions

18   unto the Lord, and you forgave the iniquity of my sin.  Be glad

19   in the Lord and rejoice, you righteous, and shout for joy, all

20   you who are upright in heart.  Thank you, Your Honor.

21          *THE COURT:*  All right.  Thank you.  Ms. Taylor.

22          *MS. TAYLOR:*  Your Honor, I have no doubt that

23   Mr. Molina made some of those same types of statements to the

24   court that he stood before in 2009 when he was found guilty of

25   possessing child pornography at the general court-martial that

1    he faced when he was in the Navy for possession of child

2    pornography at that time.

3           He was given a 48-month sentence and a dishonorable

4    discharge, and there was an agreement that he would serve a

5    24-month sentence of imprisonment then.

6           Even though this is only the second time he's come

7    before a court for this type of behavior, this is really his

8    third strike because he has the conviction for the possession

9    of child pornography in 2009 and what he's before the court for

10   today are two separate offenses separated in time by

11   approximately six months.

12          In December of 2014, which is the 2016 docket, he

13   possessed child pornography on the devices that were seized --

14   I'm sorry, that's the 2017 docket.  He possessed child

15   pornography, images of child pornography on devices that he had

16   at that time.  And the ages -- when those devices were

17   forensically reviewed, the ages of the children on those images

18   were as young as four months to up to 12 years being sexually

19   abused by adults.

20          Even though those devices were seized by federal

21   agents in December of 2014, his interaction with federal law

22   enforcement authorities in December of that year did not stop

23   him from continuing this behavior.  And new devices that he

24   obtained, he, again, was in online chat rooms in July of 2015,

25   and his activities in those rooms make up the basis for the

1    charges that he pled guilty to at the 2016 docket.

2              So, Your Honor, even though he was not charged at the

3    time those devices were seized in December of 2014 and he's now

4    being charged for those then, essentially he has three separate

5    acts of -- three separate times he's encountered law

6    enforcement, three separate times that child pornography has

7    been found, that he's been involved with child pornography by

8    law enforcement officers.

9              And but for the fact that his 2009 conviction was

10   charged and he was found guilty under a particular section of

11   the military code, he would actually be facing the 25-year

12   mandatory as a second offender here before this court.  Because

13   it was done in the manner it was, he's not, and he's facing the

14   15-year mandatory on the 2016 docket.

15             Your Honor, I raise all those issues to point out,

16   because those are two separate issues, the December 14th, the

17   July, 2015, two separate dockets, clearly involve two separate

18   sets of victims, I would ask the court to impose sentences that

19   take that into account, into account that he, you know, even

20   encountering law enforcement on separate times, you know,

21   separated by six months, having already had one prior

22   conviction that he served time for, that the court impose a

23   15-year sentence on the one docket and a five-year sentence on

24   the other and run those consecutively.

25             *THE COURT:*  All right.  Counsel, I understand there's

 1   an appellate waiver here, but it's still incumbent upon the

 2   court to consider the 3553(a) factors, which I have done here.

 3         I've considered the nature and the circumstances that

 4   bring Mr. Molina before the court.  I'm aware of his prior

 5   encounters with the law and his personal history that has

 6   brought him to a place where this conduct is so compelling,

 7   this need is so compelling that even appreciating the dire

 8   consequences, he would reoffend and come before the court.

 9         I'm impressed by the statement that he's made to the

10   court.  I think he understands how serious the offense is, the

11   horrific effect that it has on the victims because he

12   personally has been witness to that, and I do believe that he's

13   going to do his best to conform his behavior.

14         Even with a minimum sentence, he has a long time to

15   take advantage of the counseling and programs that are

16   available at the Bureau of Prisons, and I'll certainly

17   recommend those to him.

18         A guideline range sentence is appropriate and fair

19   under all of the circumstances.  I believe that the minimum

20   sentence is adjusted because of the statutory minimum and that

21   a sentence at the lower end of the guideline range would be

22   adequate to satisfy the need for a punishment and reflect the

23   seriousness of the offense on both offenses that bring

24   Mr. Molina before the court.

25         I've also considered sentencing disparity, and, again,

1    I believe that a guideline range sentence would be adequate and

2    would not result in a sentencing disparity.

3          Pursuant to the Sentencing Reform Act of 1984, it's

4    the judgment of the court that the defendant, Franklyn Benjamin

5    Molina, is hereby committed to the custody of the Bureau of

6    Prisons to be imprisoned for a term of 195 months.  This

7    sentence consists of 195 months on each count to run

8    concurrently.

9          It's ordered that the defendant pay to the Clerk, U.S.

10   District Court, a special assessment of $100 on each count due

11   immediately.

12          The court finds that the defendant does not have the

13   ability to pay a fine, but he shall make restitution in the

14   amount of $40,000 payable to the Clerk, U.S. District Court,

15   for disbursement as follows:  $25,000 to Sarah; $5,000 to Pia;

16   $5,000 to Mya; and $5,000 to Ava.  Payment of interest is

17   waived.  The defendant shall forfeit to the United States his

18   interest in certain properties described in the charging

19   document.

20          During the term of imprisonment, the restitution is

21   payable every three months in an amount after a telephone

22   allowance equal to 50 percent of the funds deposited into the

23   defendant's inmate trust fund account.

24          In the event that restitution is not paid in full

25   prior to the commencement of supervised release, the defendant

1  shall, as a condition of supervised release, satisfy the amount

2  due in monthly installments of no less than $50 to commence 30

3  days after release from confinement.

4       On release from imprisonment, the defendant shall be

5  placed on supervised release for a term of 15 years to run

6  concurrently on each count.  Within 72 hours of release, the

7  defendant shall report in person to the probation office in the

8  district to which he is released.

9       While on supervised release, the defendant shall not

10  commit any federal, state, or local crime and shall not possess

11  a dangerous weapon.

12       The defendant shall comply with the standard

13  conditions that have been adopted by the court and with the

14  following additional conditions:

15       The defendant must cooperate in the collection of a

16  DNA sample as directed by the probation officer unless a sample

17  is collected during imprisonment.

18       The defendant must participate in a mental health

19  treatment program and follow the rules and regulations of that

20  program.

21       The probation officer, in consultation with the

22  treatment provider, will supervise participation in the

23  program, which may include an evaluation and completion of any

24  recommended treatment.  The defendant must take all mental

25  health medications that are prescribed by the treating

1    physician.

2              The defendant must not incur new credit charges or

3    open additional lines of credit without the approval of the

4    probation officer.  The defendant must provide the probation

5    officer with access to any requested financial information and

6    authorize the release of any financial information.  The

7    probation office may share financial information with the

8    United States Attorney's Office.

9              The defendant must apply all monies received from

10   income tax refunds, lottery winnings, judgments, and/or other

11   anticipated or unexpected financial gains to the outstanding

12   court-ordered financial obligation.

13             If the judgment imposes a financial penalty, the

14   defendant must pay that penalty in accordance with the schedule

15   of payments.  He must also notify the court of any changes in

16   economic circumstances that might affect the ability to pay the

17   financial penalty.

18             The defendant must allow the probation officer to

19   install computer monitoring software on any computer as defined

20   in 18, United States Code, Section 1030(e)(1).

21             To ensure compliance with the computer monitoring

22   condition, the defendant must allow the probation officer to

23   conduct initial and periodic unannounced searches of any

24   computer subject to computer monitoring.

25             These searches shall be conducted for the purposes of

determining whether the computer contains any prohibited data
prior to installation of monitoring software, to determine
whether the monitoring software is functioning effectively
after its installation, and to determine whether there have
been attempts to circumvent the monitoring software after its
installation.

The defendant must warn any other people who use these
computers that the computers may be subject to searches
pursuant to this condition.

The defendant must participate in a sex offense
specific assessment.  The defendant must participate in a sex
offense specific treatment program and follow the rules and
regulations of that program.  The probation officer will
supervise participation in the program that could include an
evaluation and completion of any recommended treatment.

The defendant must not have direct contact with any
child that he knows or reasonably should know to be under the
age of 18 without the permission of the probation officer.  If
the defendant has any direct contact with any child that he
knows or reasonably should know to be under the age of 18
without the permission of the probation officer, he must report
this contact to the probation officer within 24 hours.

Direct contact includes written communication,
in-person communication, or physical contact.  Direct contact
does not include incidental contact during ordinary daily

1    activities in public places.

2         The defendant must not go to or remain at any place

3    where he knows children under the age of 18 are likely to be,

4    including parks, schools, playgrounds, and child care

5    facilities.

6         The defendant must not go to or remain at a place for

7    the primary purpose of observing or contacting children under

8    the age of 18.  The defendant must not have contact with any

9    victims or any members of the victim's family.

10        And the defendant must submit his person, property,

11   house, residence, vehicle, papers, computers, other electronic

12   communications or data storage devices or media or office to a

13   search conducted by the United States probation officer.

14        Failure to submit to a search may be grounds for

15   revocation of release.  The defendant shall warn any other

16   occupants that the premises may be subject to searches pursuant

17   to this condition.

18        The court finds that the defendant poses a low risk of

19   future substance abuse and therefore suspends the mandatory

20   blood testing requirement.  It's my determination that the

21   sentence is sufficient but not greater than necessary to comply

22   with 18, United States Code, Section 3553(a)(2).

23        I have considered all seven factors set forth in the

24   statute, and I recognize that the guidelines, policy

25   statements, and amendments are advisory only.  I find their

1    application in this case reasonable and appropriate under all

2    of the circumstances.

3         Mr. Molina, normally you would have a right to appeal

4    your conviction if you believed that the guilty plea you

5    entered was somehow unlawful or involuntary or if you thought

6    there was some other fundamental defect in the proceedings that

7    you did not waive by entering a guilty plea.

8         Normally you would also have a statutory right to

9    appeal your sentence under certain circumstances, particularly

10   if you thought the sentence I imposed on you was contrary to

11   law.  However, a defendant may waive these rights as part of a

12   plea agreement, and you've entered into a plea agreement that

13   waives some or all of your rights to appeal your conviction

14   and/or your sentence.

15        These waivers are usually enforceable, but if you

16   believe the waiver you executed in this case is somehow

17   unenforceable, you're entitled to present that theory to the

18   appellate court.  With few exceptions, any Notice of Appeal

19   must be filed within 14 days after sentence is imposed on you.

20        If you're not able to pay the costs of an appeal, you

21   may ask the court for leave to appeal in forma pauperis, and if

22   you ask, the Clerk of Court will prepare and file a Notice of

23   Appeal on your behalf.

24        Counsel, anything else for the record?

25        *MS. TAYLOR:*  Yes, Your Honor.  We would ask that

1    Counts 11 and 12 at Docket 16-CR-82 be dismissed as to this

2    defendant.

3         *THE COURT:*  Motion granted.  Anything else?

4         *MR. ABOM:*  Your Honor, when you ordered restitution to

5    be paid, we would request that -- I don't know if this

6    automatically happens, but we'd ask that it be made joint and

7    several with any other defendants in any other cases who are

8    ordered to also pay restitution on behalf -- to these victims.

9         *THE COURT:*  All right.

10        *PROBATION OFFICER:*  Your Honor, that's not common

11    practice with this type of case.  It's always just ordered as

12    it is.  We've never been told otherwise for joint and several

13    because there are so many defendants being ordered for these

14    amounts at this point in time.

15        *MR. ABOM:*  I understand.  And so what I would suggest,

16    and not in any way condoning anything --

17        *THE COURT:*  Right.

18        *MR. ABOM:*  -- but if somebody's damages are $25,000 or

19    $5,000 and that's the damages, then it would be inappropriate

20    to order ten people to pay $25,000 and that person be unjustly

21    enriched.

22        *MS. TAYLOR:*  But, Your Honor, as Mr. Abom knows,

23    that's not the case in these situations, and that's not -- the

24    damages to these victims are not $25,000.  They're much higher,

25    and we are proportioning it per defendant.  And that's -- you

1   know, so that amount is the amount for this defendant.  It

2   should not -- the government's position is, it should not be

3   ordered joint and several.

4        *THE COURT:*  I agree with you there, but I take

5   Mr. Abom's point that we don't really have an exact amount of

6   restitution owed by however many defendants have been

7   prosecuted, nor do I have any idea how many defendants have

8   been prosecuted on these particular cases.

9        *PROBATION OFFICER:*  In most of the cases, also, the

10   restitution amounts are in the millions, and what the attorneys

11   are requesting for the victims are these lower amounts.

12   Additionally, we would have no way of knowing how many

13   defendants and which defendants across the United States have

14   been ordered to pay to each victim.

15        So it's my understanding this is the way they're

16   dealing with this because it's not just Mr. Molina that's

17   paying to these specific victims, there are hundreds of

18   defendants paying into these.

19        And we have, at this point, had some victims that are

20   saying they have been -- their restitution has been fulfilled

21   and they are no longer seeking restitution.

22        *THE COURT:*  Right.

23        *MR. ABOM:*  And perhaps I should have asked to see what

24   was requested.  I mean, with all due respect to the government

25   saying, we've parsed this out, my review of the presentence

1    investigation report was that there was communication to each

2    of the victims.

3            THE COURT:  Right.

4            MR. ABOM:  And then the victims had attorneys

5    communicate directly with probation to make requests.

6            I don't know if they have parsed out -- I mean, I'm

7    not arguing that maybe it's millions, hundreds of millions of

8    dollars, and they happen to know that there are 500 defendants

9    being sentenced or not.  I don't know how they go about slicing

10   that pie.

11           Or, I mean, I think an appropriate request on behalf

12   of somebody is to say, request it all on this defendant because

13   I don't know how many other defendants are going to get

14   sentenced.  And with respect to record keeping, that's really

15   not -- I mean, unjust enrichment -- somebody shouldn't be

16   unjustly enriched.

17           THE COURT:  We are aware, I'm certain -- I'm not

18   personally, but I'm sure somebody in this courtroom is aware of

19   how many times the particular victims in this case, how many

20   times Sarah, for example, has been notified that the

21   pornography related to her has been observed, revealed.

22           MS. TAYLOR:  Your Honor, these are all common -- what

23   Mr. Abom is bringing up now post-sentencing --

24           THE COURT:  Right.

25           MS. TAYLOR:  -- are all things that defense attorneys

1    frequently raise with us during the plea agreement process.

2         *MR. ABOM:*  Which is why we put that in the plea

3    agreement, that it be joint and several with any other -- I

4    mean, it's in Paragraph 21 of the plea agreement that it agrees

5    that restitution be paid as to any victim as joint and several

6    with any other co-defendants who are ordered to pay restitution

7    to that victim.

8         *THE COURT:*  Okay.

9         *MS. TAYLOR:*  Paragraph 21?

10        *MR. ABOM:*  Restitution and child pornography cases.

11        *THE COURT:*  Ms. Weida, what does the plea agreement on

12   file with the court reflect with regard to restitution?

13   Mr. Abom, what paragraph is it?

14        *MR. ABOM:*  I have Paragraph 21.  I think Ms. Taylor

15   had a plea agreement that I had sent to the government that

16   they were unhappy with, and so they came back to me with a

17   different one.

18        *MS. TAYLOR:*  I just have all of them here, Your Honor,

19   so I have the correct one.

20        *MR. ABOM:*  I have it as Document 425.

21        *THE COURT:*  425?  Okay.

22        *PROBATION OFFICER:*  Your Honor, if it's the one I

23   have, it also agreed that the defendant would pay a minimum of

24   $50,000 per victim, which was not done in this case.  I don't

25   know if this -- this is the one I have filed on Document 425,

1   filed February 28th.

2      *THE COURT:*  Is that the last version of the plea

3   agreement?  May I see it?

4      *MS. TAYLOR:*  I believe it is, Your Honor.

5      *THE COURT:*  Okay.

6      *PROBATION OFFICER:*  There is some written stuff in

7   here, but I don't see -- this is the one I have, Your Honor.

8   I'm not saying that is the most recent, but I believe.

9      *MS. TAYLOR:*  Your Honor, what Mr. Abom is referring

10  to -- well, I'll let the court read it.

11     *THE COURT:*  Okay.  So what is it, counsel?

12  Ms. Taylor, you wanted to say something about the agreement?

13     *MS. TAYLOR:*  No, Your Honor, if the court's read it.

14     *THE COURT:*  So he agrees that it's $50,000 to any

15  victim and that the $50,000 would be joint and several with any

16  other co-defendants ordered to pay restitution to that victim.

17  Have any other co-defendants been ordered to pay restitution?

18     *PROBATION OFFICER:*  It's very possible to these.  Off

19  the top of my head, I do not know which ones currently would

20  have been ordered without doing a search of all the ones that

21  have recently been sentenced.

22     *THE COURT:*  In this case.

23     *PROBATION OFFICER:*  With respect to this case.  I

24  would not be able to tell the court, of course, all over the

25  United States.

1           *THE COURT:*  No, and that's not a co-defendant.

2           *PROBATION OFFICER:*  Correct.

3           *MS. TAYLOR:*  And, Your Honor, we wouldn't --

4           *THE COURT:*  Go ahead.

5           *MS. TAYLOR:*  These victims that -- of the possessory

6  offenses and the receipt offenses have not requested $50,000 in

7  restitution from Mr. Molina.  That provision -- they have

8  requested the amounts that the court has ordered.

9           That provision, as it's stated in the plea agreement

10  with the $50,000 amount, is the provision that's in the plea

11  agreements relating to Victim 1 in the --

12           *THE COURT:*  The Augusta case.

13           *MS. TAYLOR:*  Yes, Your Honor.  As the court can see,

14  the handwriting in the agreement is Mr. Abom's, so that

15  provision was amended, but the amount wasn't.

16           So, unfortunately, the situation we're in now is that

17  the provision of the plea agreement that Mr. -- what Mr. Molina

18  has agreed to is to pay $50,000 to each victim, which, of

19  course, is not what they've requested.  And so it seems --

20           *THE COURT:*  So the government waived that provision.

21           *MS. TAYLOR:*  In essence, Your Honor, I guess that

22  would be true, because we're certainly not requesting $50,000.

23           *THE COURT:*  Right.  So the only question here is

24  whether the 25,000 to Sarah, the 5,000 to Pia, the 5,000 to

25  Mya, and the 5,000 to Ava should be made joint and several with

1    any co-defendants.  And I don't remember, quite frankly,

2    whether any of the co-defendants in this case viewed this

3    particular pornography.

4         *MS. TAYLOR:*  I believe there are.  There are one or

5    two co-defendants that may have viewed some of those same

6    series.  But nevertheless, Your Honor, the government's

7    position would be the same, that this type of restitution is

8    being apportioned per defendant --

9         *THE COURT:*  Right.

10        *MS. TAYLOR:*  -- and should not be joint and several.

11        *THE COURT:*  All right.  Well, that's his agreement

12   with the government.  He agreed to plead guilty, and the

13   government made certain concessions, and one of those

14   concessions was that it would be joint and several with other

15   co-defendants, so that's what I'm going to order here.

16        *MS. TAYLOR:*  But I thought Your Honor was saying we

17   had waived that provision.

18        *THE COURT:*  You waived the $50,000 provision, the

19   $50,000 minimum restitution.  The victims -- you say the

20   victims didn't request it, but I don't think --

21        *MS. TAYLOR:*  They did not request that amount, that's

22   correct.

23        *THE COURT:*  Right.  But I don't think that would

24   require -- the fact that they didn't request it I don't think

25   would require the government to waive it, but you did waive it.

 1    But --

 2              MS. TAYLOR:  I think we should, Your Honor.

 3              THE COURT:  Right.

 4              MS. TAYLOR:  I mean, in all candor.

 5              THE COURT:  But the defendant did not agree to waive

 6    the commitment that the government made to him that it would

 7    be joint and several -- restitution would be joint and several

 8    with co-defendants in this case.

 9              MS. TAYLOR:  That's correct, Your Honor.

10              THE COURT:  So that's the way I will make the order.

11    And then when we go forward, we'll have to ask probation to

12    look carefully at the agreements, and maybe other defendants

13    will have to have their restitution adjusted accordingly to

14    make sure that the victims are made whole.

15              But in this instance, in fairness to Mr. Molina, he

16    has an agreement that requires the court to order joint and

17    several restitution with any co-defendants who are ordered to

18    make payments to these same victims, and that's the way we'll

19    order it.

20              PROBATION OFFICER:  And, Your Honor, for the ones that

21    have already been sentenced, we may have to amend their

22    judgment and commitment orders because we're probably going to

23    have some issues with the financial litigation unit as far as

24    imposing only joint and several on one defendant and not the

25    others if they're named.  But I can look into that, and I can

1    advise if those judgment and commitment orders would need to be

2    amended.

3            *THE COURT:*  I have a feeling I'll hear from the

4    government if that's the case.  So we'll let it sit.  Okay.

5            *MS. TAYLOR:*  And, Your Honor, just --

6            *THE COURT:*  Yes.

7            *MS. TAYLOR:*  Just for the court's information going

8    forward, there would not be any other defendants that are

9    similarly situated to Mr. Molina because of his unique

10   situation in any of the additional -- the few additional

11   sentencings that we have outstanding.  Other than the trial

12   defendants, none of those defendants would have agreements

13   similar to Mr. Molina's.

14           *THE COURT:*  All right.  Mr. Abom, anything else for

15   the record?

16           *MR. ABOM:*  Nothing further, Your Honor.

17           *THE COURT:*  Thank you, counsel.

18           *MS. TAYLOR:*  Thank you, Your Honor.

19           *THE COURT:*  We'll be in recess.

20           *COURTROOM DEPUTY:*  Court is in recess.

21      *(Whereupon, the proceedings were adjourned at 10:40 a.m.)*

22

23

24

25

1                CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4        I, Lori A. Shuey, Federal Certified Realtime Reporter, in

5   and for the United States District Court for the Middle

6   District of Pennsylvania, do hereby certify that pursuant to

7   Section 753, Title 28, United States Code, that the foregoing

8   is a true and correct transcript of the stenographically

9   reported proceedings held in the above-captioned matter and

10  that the transcript page format is in conformance with the

11  regulations of the Judicial Conference of the United States.

12       Dated in Harrisburg, Pennsylvania, this 26th day of

13  October, 2017.

14

15                           **/s/ Lori A. Shuey**
                             Lori A. Shuey
16                           Federal Certified Realtime Reporter

17

18

19

20

21

22

23

24

25