**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **NO. 1:16-CR-82** |
| | ) | |
| **v.** | ) | **(Judge Yvette Kane)** |
| | ) | |
| **(3) SCOTT LANE, a.k.a. "NYC Perv," (8) WILLIAM STAPLES, a.k.a., "Bill Simpson," and (10) DYLAN HEATHERLY, a.k.a., "Daniel Sotherland,"** | ) | |
| | ) | **(Electronically Filed)** |
| **Defendants.** | ) | |

**UNITED STATES' MOTION IN LIMINE TO ADMIT EVIDENCE OF DEFENDANTS' PRIOR CHILD MOLESTATION OFFENSES PURSUANT TO FEDERAL RULE OF EVIDENCE 414 AND ALTERNATIVELY PURSUANT TO RULE 404(B)**

COMES NOW, the United States of America, by David J. Freed, United States Attorney for the Middle District of Pennsylvania, Meredith A. Taylor, Assistant United States Attorney, and Austin M. Berry, Trial Attorney, and respectfully moves this Honorable Court for an order admitting evidence of Defendants' prior child sexual molestation offenses pursuant to Federal Rule of Evidence 414 or, in the alternative, pursuant to Federal Rule of Evidence 404(b).

# INTRODUCTION

Congress enacted Federal Rules of Evidence 413–415 as part of the Violent Crime Control and Law Enforcement Act of 1994. Pub. L. No. 103-322, 108 Stat. 1796 (1994). These Rules are designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption that "evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects." 140 Cong. Rec. H8991-92 (1994) (remarks of principal House sponsor, Rep. Molinari); *see also* 140 Cong. Rec. S12990; David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi.-Kent. L. Rev. 15, 19 (1994)[1]. The legislative sponsors of Rules 413-415 further noted that:

> The reform effected by these rules is critical to the protection of the public. . . [a]nd is justified by the distinctive characteristics of the cases to which it applies. In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an

1 The principal sponsors of Rules 413-415 noted that an address delivered to the Evidence Section of the Association of American Law Schools by David J. Karp – then Senior Counsel at the Office of Policy Development at the Department of Justice and the drafter of Rules 413-415-- was to serve as an "authoritative" part of the Rules' legislative history. *See* 140 Cong. Rec. 23,602 (1994); *Johnson*, 283 F.3d at 153-56.

This legislation was initially proposed in February 1991 in the Women's Equal Opportunity Act and subsequently reintroduced in the Sexual Assault Prevention Act bills of the 102d and 103d Congress. *See* 137 Cong. Rec. S3212, 3238-42 (1991) (bill text and original Senate sponsors' statement).

> unusual disposition of the defendant -- a sexual or sado-sexual interest in children -- that simply does not exist in ordinary people.
>
> Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, ***there is a compelling public interest in admitting all significant evidence that will shed some light on the credibility of the charge and any denial by the defense***.
>
> Similarly, sexual assault cases, where adults are the victims, often turn on difficult credibility determinations . . . Knowledge that the defendant has committed rapes on other occasions is frequently critical in assessing the relative plausibility of these claims and accurately deciding cases that would otherwise become unresolvable swearing matches. The underlying legislative judgment is that the evidence admissible pursuant to [Rules 413–415] is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.

*Id.* (emphasis added)

In adopting these rules, Congress built upon a large body of precedent favoring a permissive approach to similar crimes evidence in sex offense cases. Many jurisdictions have recognized the need for special evidence rules to ensure fully informed decisions by juries in cases involving sexually violent crimes or the sexual abuse of children. Such jurisdictions have historically allowed such evidence through the adoption of special "lustful disposition" rules. *See* Thomas J. Reed, *Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex*

*Offender Cases*, 21 Am. J. Crim. L. 127, 188 (1993) (characterizing 29 states as allowing propensity evidence in some category or categories of sex offense cases). Other jurisdictions achieved similar results by interpreting standard exception categories like those found in Rule 404(b) with unusual liberality in sex offense cases. *See, e.g.*, IA *Wigmore's Evidence* § 62.2, at 1334-35 (Tillers rev. 1983) (rule against propensity evidence often not honored in sex offense cases). Furthermore, Congress recognized and intended that this approach would make the admission of similar crimes evidence in federal sex offense cases the norm, and its exclusion the exception. The legislative sponsors noted:

> The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The ***presumption is in favor of admission***. The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.
>
> In line with this judgment, the rules do not impose arbitrary or artificial restrictions on the admissibility of evidence. Evidence of offenses for which the defendant has not previously been prosecuted or convicted will be admissible, as well as evidence of prior convictions. No time limit is imposed on the uncharged offenses . . . as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding substantial lapses of time in relation to the charged offense or offenses.

140 Cong. Rec. H8992 (1994) (Statements of Rep. Molinari and Senator Dole) (emphasis added); *See also* 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi.-Kent L. Rev. at 19.

Pursuant to Federal Rule of Evidence 414 or, alternatively, Federal Rule of Evidence 404(b), the United States seeks a pre-trial order permitting the admission of Defendants' other crimes and acts: specifically, Defendants' possession of child pornography and attempt to access child pornography.

## FACTUAL AND PROCEDURAL BACKGROUND

This case started in July 2015 when an undercover police officer in Toronto, Canada observed the live sexual abuse of Victim-1 in "Application A." "Application A,"[2] is designed for video conferencing on multiple device formats. To use this application, a user downloads the application to a computer, mobile phone or other mobile device (*e.g.*, tablet) via direct download from the company's website. Once downloaded and installed, the user is prompted to create an account. "Application

2 The actual name of "Application A" is known to law enforcement and the defendants. This application remains active and disclosure of the name of the application would potentially alert its users to the fact that law enforcement action is being taken against users of the application, thereby provoking users to notify other users of law enforcement action, flee, and/or destroy evidence. Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the application will be identified herein as "Application A."

A" users can invite others to an online meeting "room." In each instance, both "Application A" and the targets are referring to the 10-digit number that specifically identifies an online location where each user can see and interact with the other users in the same room.

When a user chooses to enter a specific meeting room, the user enters the 10-digit number and enters the username that he wants to use on that specific occasion, which does not have to be the same as the account username. "Application A" does not require a certain number of characters for a particular username. Consequently, a user can create a name with a single special character, such as "#" or a single letter, such as "a."

During a meeting, users can show a live image or video of themselves to other users through the webcam feature. Users may also display the contents of their own computer desktops to the other users in the room. The ability to display their own computer desktops allows users to show videos and photos to other users in the room. "Application A" also allows users to send text messages visible to all of the users in the room, or private messages that are similar to instant messages sent between two users.

"Application A" permits users to conduct online video conferences for free

for a limited number of minutes. Paid subscribers can conduct online video conferences for an unlimited amount of time. Some "Application A" users with a paid account permit their rooms to be accessed without a password such that anyone who knows the room number can enter and leave the room at any time.

On July 22, 2015, Toronto law enforcement began monitoring an "Application A" room that Toronto law enforcement became aware of on July 10, 2015 as a room that showed child pornography. The Toronto undercover officer ("UC") observed a German user streaming a video from the "Tara" series, which depicts an adult male wearing a mask while he vaginally and orally rapes the prepubescent girl. During the stream of that video, Defendant William Augusta was logged into the room. The Toronto UC successfully recorded the stream of that video.

At approximately 18:37 EDT, Defendant Augusta (utilizing user name "Guy Johnson") posted "Pennsylvania with a . . . toy if you can visit." Immediately thereafter, at 18:38 EDT, the German user who had been streaming the "Tara" series, began streaming a prerecorded video called "boy1.mp4" that depicted Augusta orally raping a prepubescent black child (hereafter Victim-1). The Toronto UC successfully recorded the stream of that video. While the video was streaming,

Augusta commented, "mmmmmmmm now THIS is porn." Additionally, during the stream of that video, other users in the room commented on the video. For example, Defendant Sewell, a.k.a. "SexEducation8-13" commented, "rape the nigger baby!!!." After the video completed, Augusta posted, "if you liked that last hardcore vid that was recorded live, me and my fucktoy [age redacted] yr old [Victim-1's real first name]." Another user suggested to Augusta, "nice you should bring out your fucktoy."

The Toronto UC attempted to message Augusta via "Application A," but was unsuccessful. Between approximately 18:50 and 19:16 EDT, the Toronto UC was away from the computer and it was not recording, but the "Application A" room was still active and the UC was logged into that room. Upon returning to the computer, at approximately 19:17 EDT, the UC observed Augusta streaming the live sexual abuse of Victim-1. Specifically, Augusta orally raped Victim-1 and also digitally penetrated Victim-1's anus. The live abuse stream continued until approximately 19:22 EDT when another user took over the screensharing function in Application A, which made that user's screen the dominant screen, and Augusta's screen was minimized for everyone. A few seconds later, Augusta's screen turned off. The Toronto UC was able to record the activity from approximately 19:17 EDT until the

end of the stream, but the chat logs indicate that the live abuse began at approximately 19:00 EDT.

On that same day, July 22, 2015, the Toronto UC contacted a Homeland Security Special Agent located in Phoenix, Arizona and advised that agent about the live-abuse activity just witnessed in "Application A." On that same day, July 22, 2015, the HSI agent served a summons on "Application A" for IP logs associated with the room in which the Toronto UC had observed the live abuse. "Application A" quickly responded and provided the IP address, which geolocated to the Carlisle, Pennsylvania area and was registered to Comcast Communications. The HSI agent then served an "exigent circumstances" request on Comcast, which verbally provided the subscriber name, address and telephone number. Additional open-source checks confirmed that the subscriber residence was a multi-generational household that included a prepubescent child that matched the description and depiction of the child who had been viewed in "Application A."

On July 23, 2015, a Pennsylvania state search warrant was executed at the residence in Carlisle, PA. Victim-1 was rescued and subsequently confirmed that he had been repeatedly sexually abused by Augusta. Augusta was arrested at a different location, but refused to make a statement. Subsequent review of chat logs revealed

that Augusta has told other like-minded pedophiles that he has been sexually abusing Victim-1 since Victim-1 was one-year-old.

The following is a relevant timeline of events that occurred in the "Application A" room before and during the live transmission. First, a user in Germany streamed a previously recorded video of Augusta sexually abusing Victim-1. During that stream, Defendants Augusta, Sewell, and Fensler commented on it. A few minutes later, Augusta brought Victim-1 in front of the camera and proceeded to sexually abuse him, including oral rape and digital penetration, for the next 22 minutes. During the live-stream, other defendants, and unindicted co-conspirators, commented on the sexual abuse in a way that encouraged the abuse to continue. While the Toronto UC did not start recording the video content until later, the UC was able to recover the chat log that began well before the UC started recording what she saw on her screen. Consequently, the following chat log starts before the UC recording and continues after. The trial defendants (Lane, Edgecombe, Heatherly) are in bold below:[3]

3 Defendant Staples did not login to the room until after the live event was finished. While Defendant Heatherly was logged into the room during the first 6 minutes of the live event, the United States exercised its prosecutorial discretion to not charge Heatherly in the production count centered on the abuse of Victim-1, but instead charged him only in the conspiracy to advertise and receive child pornography counts.


**18:52:29 From nyc perv : 31 nyc perv here (Scott Lane)**
18:52:38 From Big Dawg : Georgia?
18:54:06 From Guy Johnson : srry back if u messaged me (Augusta)
18:54:49 From Guy Johnson : did u guys like that video? (Augusta)
18:55:17 From dirtypervy : love some good boi rapping
18:55:22 From . : GUy hot HOTTTTTTTTTTTTTT (Bruce Edgecombe)
18:55:59 From babyRaperSnuffer : fuck yea hot vid earlier (Matthew Fensler)
18:56:03 From Sla,NPerv : london? (Non-U.S. target)
18:56:38 From . : us mid wwst (Bruce Edgecombe)
**18:58:05 From nyc perv : nyc anyone? (Scott Lane)**
**18:59:23 From nyc perv : anyone showing vids? (Scott Lane)**
18:59:36 From New 'Phone : or live? (Non-U.S. target)
**18:59:44 From Daniel Sotherland : so appreciate if someone showed vids—need to bust before work (Dylan Heatherly)**
**18:59:47 From nyc perv : i can do live tomorrow (Scott Lane)**
18:59:56 From New 'Phone : with what? (Non-U.S. target)
19:00:15 From . : ask GUY if [Victim-1] is home (Bruce Edgecombe)

**Live Event Begins Here**

19:00:25 From New 'Phone : [Victim-1] is home (Non-U.S. target)
19:01:00 From New 'Phone : we all watching guy johnson (Non-U.S. target)
19:01:05 From babyRaperSnuffer : turn off the video wtf? (Matthew Fensler)
**19:01:06 From nyc perv : who is [Victim-1]? (Scott Lane)**
19:01:25 From New 'Phone : Stop screensharing (Non-U.S. target)
19:01:41 From New 'Phone : guy has his [relative] [Victim-1] (Non-U.S. target)
19:01:42 From h. loroc : keep it (Ed Westbury)
19:02:34 From dirtypervy : thanks man
19:02:37 From dirtypervy : made me shoot haha
**19:02:46 From Daniel Sotherland : so close here (Dylan Heatherly)**
19:03:19 From letsdothisnowtoo1 : Look at that throbbing (Moises Marquez)
19:09:32 From jay : spread his ass cheeks (Non-U.S. target)
19:09:59 From babyRaperSnuffer : you should smack him around a couple of times (Matthew Fensler)
**19:10:20 From nyc perv : let us hear the audio (Scott Lane)**
19:11:03 From Andy : guy put the sound on (Non-U.S. target)

**19:11:35 From nyc perv : make out with him (Scott Lane)**
19:13:10 From lovefurrymen : there's one perv here (Non-U.S. target)
**19:13:17 From nyc perv : show more face (Scott Lane)**
19:13:27 From lovefurrymen : guy Johnston (Non-U.S. target)
19:13:46 From lovefurrymen : no child here! (Non-U.S. target)
19:13:56 From SS Lorenz : Sado (Non-U.S. target)
19:14:08 From cumslut perv : cams on please (Casey O'Dell)
19:14:58 From Pp : Spit in his face (Non-U.S. target)
**19:15:44 From nyc perv : fuck him (Scott Lane)**
19:15:53 From Andy : guu he needs to be fucked (Non-U.S. target)
19:17:58 From Andy : rape him (Non-U.S. target)
19:18:51 From b b_lv : how old is the boy (Non-U.S. target)
**19:21:12 From nyc perv : 31 nyc perv here. fuck nephew. (Scott Lane)**
19:21:49 From Irish pd : Age is nephew? (Non-U.S. target)
19:21:54 From Andy : guy some guys think this is a vid do something to prove it's live (Non-U.S. target)
19:21:58 From Andy : smack him (Non-U.S. target)
19:22:50 From . : [Victim-1] has his shirt on again (Bruce Edgecombe)

**Live Event Ends Here**
19:23:47 From Andy : get him to say hi andy (Non-U.S. target)
**19:24:28 From nyc perv : lets see some fucking (Scott Lane)**
19:25:52 From Dad Bear : hi guys
**19:27:15 From nyc perv : anyone have vids? (Scott Lane)**
19:27:44 From FlyingPerv : cunts? (Non-U.S. target)
19:27:50 From gl to Guy Johnson (privately) : was that a vid or live? (Toronto UC)
19:27:51 From FlyingPerv : u like? (Non-U.S. target)
**19:28:15 From nyc perv : oh yeah (Scott Lane)**
19:29:12 From YngCanPigPerv : SMOKE TIME? (Non-U.S. target)

Augusta disconnected from that "Application A" room at approximately 19:39, and reconnected about an hour later at 20:33. He stayed in the room for

another 48 minutes until about 21:22 EDT. During the time that Augusta was disconnected (19:39 to 20:33), additional child pornography was streamed by other users, as captured by the Toronto UC. For example, at approximately 20:16, co-Defendant Wehr streamed a video of an adult penis being forced inside the mouth of a grimacing infant. For the next 13 minutes, Defendant Wehr continued to stream various videos of infants being sexually abused. Defendant Edgecombe remained in the room until 22:01. At approximately 20:13, Defendant Edgecombe, who was the host of the room at that moment, said "hey guys all talking and cumming is ok however NO TYPING NOISE."

Defendant Staples entered the room at approximately 20:35, just two minutes after Defendant Augusta returned at 20:33. The chat logs from Augusta's devices show additional chats that ensued from approximately 20:34 to 21:22. During that time, Defendant Staples made the following comments:

20:36 – "any perv?"
20:42 – "any hot bby vids?"
20:58 – "hail cigarffpumpboy…"
21:12 – "anyone have hot bby vids?"
21:18 – "any other….bby?"

Defendant Staples exited the room at about 21:36.

A forensic analysis of the electronic devices for all trial defendants revealed

the presence of "Application A" on their devices, as well as additional evidence that each defendant was engaged in viewing and accessing child exploitation material. For example, Defendant Lane possessed multiple images of prepubescent child pornography, as well as at least one video of a prepubescent child masturbating an adult male; the child has semen on her face. Additionally, evidence from Defendant Lane's devices showed that he had accessed videos with titles such as "6yo enjoy dads cock.avi," "Andy 4yo anal.avi" and "Toddler Rape.avi." Similarly, Defendant Heatherly possessed images of infants being orally raped, as well as toddlers being anally raped.

In their arrest interviews, each trial defendant made inculpatory statements. For example, in a recorded post-*Miranda* interview, Defendant Heatherly admitted that he used the alias "Daniel Sotherland," which was the same alias used on "Application A" on July 22, 2015, and that he had used that alias for approximately 10 years for the purpose of looking at pornography. Additionally, Defendant Heatherly admitted that he had accessed "Application A," viewed child pornography on that site, and even met individuals in person who he knew to be pedophiles. On multiple occasions, he invited pedophiles he met online to come to his residence where they viewed child pornography together and engaged in sexual conduct with

each other while watching the child pornography. Defendant Heatherly further admitted that when he made the comment "so close here" on July 22, 2015, he was masturbating. Additionally, Defendant Heatherly admitted that the comment "so appreciate if someone would show vids – need to bust before work" was also likely something he would have said.

Defendant Staples also made recorded post-*Miranda* statements on the day of his arrest. He admitted to using "Application A" and to seeing "stuff that shouldn't be on there." Staples further admitted to seeing some content with a child and an adult that "turned his stomach." He also said that he would go into the "perv" rooms, and that he used aliases "Bill Simpson" and "Tim." He further admitted that his comment for "hot bby videos" would have been for boys or baby videos. Staples admitted that he had been in these rooms when child pornography had been streamed and that he had not reported it to law enforcement.

Defendant Lane also made post-*Miranda* statements, but his interview was not recorded. He signed a Statement of Rights form, waiving his rights and agreeing to speak with two agents first in his bedroom, then later in his roommate's bedroom, and continuing the conversation to his living room. During the interview, Defendant Lane admitted to using "Application A" and admitted to having seen something that

bothered him, but that he declined to elaborate. When questioned about whether he could help identify the perpetrator in the video, Lane stated he could not answer the question because of the legal implications and asked what would happen to him if he told the agents what he saw. Specifically, Lane told the agents interviewing him, "hypothetically, if I told you what I saw I don't feel comfortable discussing it. I don't know the law." When the agents asked Lane if he did not care about the little boy in the video, Lane stated "that's not true, I can't help you. I'm being selfish and I don't know the law." Approximately 1 hour and 40 minutes into the interview, Lane requested his attorney, so the agents ceased all questioning.

**Procedural History**

On March 30, 2016, a Grand Jury in the Middle District of Pennsylvania indicted Augusta and 13 "John Doe" defendants in a multi-count indictment charging Sexual Abuse of Children-Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) (Count 9-Lane); Criminal Conspiracy to Produce Child Pornography, in violation of 18 U.S.C. §§ 2251(a), 2251(e) (Count 10-Lane); Criminal Conspiracy to Receive and Distribute Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Count 11); Receipt and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count 12); Criminal

Conspiracy to Publish a Notice or advertisement seeking Child Pornography, in violation of 18 U.S.C. § 2251(d) (Count 13) and Publishing a Notice or advertisement seeking Child Pornography, in violation of 18 U.S.C. § 2251(d) (Counts 14, 16-17).

During the month of April 2016, HSI executed search warrants on the residences of twelve of the thirteen John Doe targets. One of the targets, David Sewell consented to the search of his property and thus a search warrant was not executed. On May 11, 2016, the same Grand Jury returned a Superseding Indictment, which replaced the "John Does-1 through -13" with the true names of the defendants, including the trial defendants, Heatherly, Lane and Staples. In addition, a fifteenth subject was identified during the course of the search of Defendant Wehr, resulting in the addition of Defendant Jason Bolden to the Superseding Indictment. Every defendant was ultimately detained pending trial. 11 of those 15 defendants have pleaded guilty.[4] Jury selection and trial for three of the four remaining defendants, Heatherly, Lane and Staples, is currently set for January 16, 2018. On January 4, 2018, the Court severed Edgecombe's case from the other defendants to be tried at

4 As the Court is aware, following the entry of his guilty plea but before his sentencing hearing, co-defendant Christopher Wehr suffered complications from surgery and passed away at a local hospital. Accordingly, his case has now been dismissed.

a later date.

## ARGUMENT

### I.     Evidence of Possession of, and Access with Intent to View, Child Pornography is Intrinsic to the Charged Offenses

As outlined above, each defendant possessed evidence on their respective electronic devices of child pornography, either in the form of actual images or videos, or in the form of file names indicative of child pornography. Rule 402 of the Federal Rules of Evidence provides that "all relevant evidence is admissible." Fed. R. Evid. 402. Relevant evidence is defined in Rule 401, as "[evidence that] has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. In summary, the Rule asks whether the evidence being introduced has a "tendency to make the existence" of a fact to be proved "more probable or less probable." Advisory Committee Notes Fed. R. Evid. 401. Thus, relevant evidence should be admitted unless its "probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The evidence the United States seeks to introduce is highly probative, relevant evidence. In order to convict all three defendants of conspiracy to receive child

pornography, the United States must prove, in essence, that each defendant entered into an agreement with at least one other person for the purpose of receiving material that contained a visual depiction of sexually explicit conduct of a minor. *See* Title 18 U.S.C. § 2252(a)(2) and (b)(1). Similarly, to convict all three defendants of conspiracy to advertise, the United States must prove, in essence, that each defendant entered into an agreement with at least one other person for the purpose of making or publishing any notice or advertisement seeking to receive a visual depiction of a minor engaging in sexually explicit conduct. *See* Title 18 U.S.C. § 2251(d).

The images, videos, and other related evidence found on each defendant's computer depicting prepubescent children engaged in sexually explicit conduct make it "more probable" that each defendant knowingly sought to receive child pornography and knowingly sought to post a notice or advertisement requesting that others share child pornography with them. *See* Fed. R. Evid. 401. Thus, the proffered evidence is relevant and should be admitted at trial.

Not only is this evidence relevant and admissible pursuant to FRE 401, but such evidence is also admissible because it is inextricably intertwined with evidence that will be admitted to prove the offenses charged in the Second Superseding Indictment. "Evidence should not be treated as 'other crimes' evidence when 'the

evidence concerning the [“other”] act and the evidence concerning the crime charged are inextricably intertwined.’” *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (citing *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979)). The Ninth Circuit has held that other acts evidence that is inextricably intertwined with a charged offense is independently admissible and is exempt from the requirements of both Rule 404(b) as well as Rule 414. *See United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (discussing Rule 404(b)) (citing *United States v. Dorsey,* 677 F.3d 944, 951 (9th Cir.2012); *see also United States v. Johnson*, 26 F. App'x 624, 625 (9th Cir. 2001) (discussing Rule 414)). “Extrinsic evidence must be analyzed under Rule 404(b); intrinsic evidence need not be.” *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010).

Evidence is considered inextricably intertwined when it is “necessary...to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.” *Dorsey,* 677 F.3d at 951 (citing *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)). The evidence the United States seeks to introduce establishes each defendant’s long-term sexual attraction to minors and illustrates their ongoing efforts to obtain access to materials depicting the sexualization and sexual exploitation of young children. As such, this evidence is

not only highly probative, it is also necessary to offer the jury a "coherent and comprehensible story" regarding the motivating purpose behind each defendant's posting of comments to the "Application A" chat message function.

Moreover, the evidence is intrinsic because it proves they were successful in their quest to receive child pornography both through the posting of a notice and advertisement seeking to receive it, as well as their conspiracy to receive it more generally. In other words, they are charged with conspiring to post a notice and advertisement offering to receive child pornography and they are charged with conspiring to receive child pornography, and this evidence of child pornography on their respective devices is quintessentially intrinsic to those charges and thus should be admitted as such.

## II. Defendants' Prior Acts of Child Molestation Are Admissible Pursuant to Federal Rule of Evidence 414.

If this Court concludes the possession of child pornography is not intrinsic evidence, the United States submits this evidence is admissible under Federal Rule of Evidence 414. In stark contrast to Rule 404(b), Rule 414 specifically allows for the use of a defendant's other acts for the purpose of demonstrating to the jury that the defendant had a propensity to commit these types of crimes. *See United States v. Levinson*, 504 F. App'x 824, 827 (11th Cir. 2013); *United States v. Rivera*, 551 F.

App'x 531, 533 (11th Cir. 2014); *United States v. Guidry*, 456 F.3d 493, 501 n.2 (5th Cir. 2006) ("Rules 413, 414, and 415 provide exceptions to the general prohibition on character evidence in cases involving sexual assault and child molestation.").

Federal Rule of Evidence 414 provides, in pertinent part:

> In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

The rule defines "child molestation" broadly but includes "any conduct proscribed by Chapter 110 of title 18, United States Code," and "any conduct proscribed by Chapter 109A of title 18, United States Code."   *See* Fed. R. Evid. 414(2)(A),(2)(B). Conspiracies and attempts are also included. *See* Fed. R. Evid. 414(2)(F). The term "child molestation" encompasses charged or uncharged criminal conduct under state or federal law involving traditional notions of hands-on offenses against children as well as the production, distribution, receipt or possession of child pornography. *See* Fed. R. Evid. 414(d)(2).

Prior to the passage of Rules 413-415, admission of a defendant's prior crimes or acts was governed by Rule 404(b), which generally disallows such evidence when

used to prove character in order to show action in conformity therewith. *See United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001) (upholding admission of evidence of defendant's prior acts of molestation and conviction for child molestation 11 years before the charged conduct because such Rule 414 evidence serves to "corroborate testimony of the victims," and is "exactly the sort of use of prior acts evidence that Congress had in mind when enacting Rule 414." Rule 414 "changes this general rule with respect to child molestation cases." *Id. see also United States v. Brimm*, 2015 WL 1898375, at *2-3 (11th Cir. Apr. 28, 2015) (citing *United States v. McGarity*, 669 F.3d 1218, 1243–44 (11th Cir. 2012) (addressing Rule 414); *United States v. Batton,* 602 F.3d 1191, 1196 (10th Cir. 2010) (concluding that Rule 413 provides an exception to Rule 404's prohibition of propensity evidence); *United States v. Rogers,* 587 F.3d 816, 821 (7th Cir. 2009) (same); *United States v. Lewis*, No. 07-3143, 2009 WL 377302 (D.C. Cir. Jan. 23, 2009) (evidence that defendant possessed child pornography admissible in prosecution for attempted coercion and enticement of a minor). However, despite their differences, both Rules 414 and 404 are subject to the balancing test of Rule 403. *See McGarity,* 669 F.3d at 1244 n.32.

Rule 414(a) provides that, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation," and such "evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). Pursuant to Rule 414, "evidence that a defendant engaged in child molestation in the past is admissible to prove that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case." *Levinson*, 504 F. App'x at 827.

In short, the Rule 414 analysis has four prongs: (1) Defendant must be accused of a "child molestation" offense, as defined by the rule; (2) the evidence the United States seeks to admit must be "child molestation" offenses, as defined by the rule; (3) the evidence must be relevant; and (4) the probative value of the evidence must not be substantially outweighed by the danger of undue prejudice. All four prongs have been met here.

**a. Defendants are accused of "child molestation" offenses under Rule 414.**

All three defendants are presently charged with violating 18 U.S.C. §§ 2251(d) and 2252(a)(2). Additionally, Lane is charged with violating § 2251(a). All three statutes are located in Chapter 110 of Title 18. Thus, the first prong of the Rule

414 analysis, that requires the defendants be charged with a "child molestation" offense, is satisfied. *See* Fed. R. Evid. 414(d)(2)(A).

**b. Defendants' possession of, and attempt to access, child pornography are "child molestation" offenses under Rule 414.**

Each defendant's possession of child pornography and attempt to access child pornography clearly qualifies as "child molestation" because it fits neatly within Rule 414(d)(2)(B), which includes "any conduct prohibited by 18 U.S.C. Chapter 110." Indeed, Chapter 110, specifically 18 U.S.C. §§ 2252 and 2252A, prohibits the possession of child pornography, and § 2252(a)(4)(B) prohibits the access with intent to view child pornography.

For example, Defendant Lane possessed an 18-second long video depicting a close-up of a prepubescent girl masturbating an adult male with semen already on her face when the video begins. Similarly, he possessed at least 14 still images of prepubescent children engaged in sexually explicit conduct, some being orally penetrated, while others were vaginally or anally penetrated. (Exhibit 34, Submitted in camera). Additionally, evidence from Defendant Lane's devices showed that he had accessed videos with titles such as "6yo enjoy dads cock.avi" and "Andy 4yo anal.avi" and "Toddler Rape.avi," and had videos in his Recycle Bin with titles such as "2 dads abuse boy.avi" and "Dad fucks 8 Yos Ass-Sound – 2009.flv."

Likewise, Defendant Heatherly possessed at least 10 still images and at least 4 videos of prepubescent children engaged in sexually explicit conduct with adult males. Heatherly's images include young children being orally and anally penetrated. One of the videos was titled "Young_boy_and_man_suck_each_other." (Exhibit 33, Submitted in camera.)

Similarly, the forensic evidence on Defendant Staples's devices showed he possessed images similar to his co-defendants. For example, Staples possessed images of boys under the age of 18 with their hands tied behind their back engaged in sexually explicit conduct. Additionally, he possessed an image of a prepubescent girl in a dress with her pubic area exposed and an adult erect penis inside her mouth. Staples also possessed multiple animated and computer-generated images of prepubescent children engaged in sexually explicit conduct with an adult male, including one that said "A son's first orgasm. A Daddy's duty." (Exhibit 71, Submitted in camera.)

Each exhibit proposed expressly depicts, or indicates in the file title, that the file retrieved from the respective defendant's computer contained an image of child pornography as defined in Chapter 110 and thus was an act of "child molestation" under Rule 414.

c. **<u>Defendant's prior acts of "child molestation" are relevant to the charged offense.</u>**

Defendants' possession of, and access with intent to view, child pornography is relevant to the charged offense because it demonstrates a sexual interest in children temporally related to their activity on "Application A." That is, the same devices used to access "Application A" also contained these images of child pornography.

"Possession of child pornography and child molestation are often related and are mutually relevant." *United States v. Adleta*, 2013 WL 4734824, at *1, *3 (M.D. Fla. Sept. 3, 2013) (citing *United States v. Woods*, 684 F.3d 1045, 1064 (11th Cir. 2012)). For example, in *United States v. Woods*, 684 F.3d 1045 (11th Cir. 2012), the defendant was charged with downloading child pornography. In an interview with law enforcement, the defendant admitted to molesting his niece. *See id.* At trial, the defendant argued that the government could not prove that he, rather than his ex-wife or roommates, was the one to receive and possess the child pornography. *See Id.* The trial court admitted the evidence of his prior molestation of his niece, and the court of appeals affirmed such admission because that evidence of molestation "was probative of [the defendant's] interest in child pornography and therefore made it more likely that [the defendant], and not his ex-wife or roommates, was responsible for the child pornography found on the two computers." *Id.* at 1065.

Similarly, in *United States v. Moore*, 425 F. App'x 347 (5th Cir. 2011), the defendant was charged with possessing and receiving child pornography. The prosecution admitted evidence, under Rule 414, that the defendant had molested his step-daughter. The Fifth Circuit affirmed the admission of such evidence because of the "similarities between the alleged molestation and the downloading of child pornography" in that "both acts involved similar mental states." *Moore*, 425 F. App'x at 352. Moreover, the Fifth Circuit affirmed the usage of such other molestations "to prove [the defendant's] sexual interest in children." *Id*.

The same principles from *Woods* and *Moore* apply here. Defendants' possession of and access with intent to view child pornography should be admitted to prove their respective sexual interest in children, such as Lane's conspiracy with others to coax Augusta to cause Victim-1 to engage in sexually explicit conduct to be transmitted live via the internet. Similarly, Heatherly, Staples, and Lane are all charged in a conspiracy count with posting a notice or advertisement seeking to receive child pornography. Thus, the fact that all the defendants possessed files on their computer of prepubescent children engaged in sexually explicit conduct is highly relevant to the question of whether they each sought to receive child pornography on "Application A" by posting a notice or advertisement for such

material. Indeed, as some of their other filings have suggested, their defense will likely center on the theory that the United States cannot prove at any one moment in time what the defendants were actually looking at on their screen. Thus, the evidence that they had such images on their devices is critically important for the jury to be able to conclude that each defendant knowingly and intentionally sought to receive such contraband material.

Additionally, the images they each possessed are of young children, not just under the age of 18, but almost all of the proposed exhibits depict children under the age of 14. Indeed, as more fully described above, some of the files had descriptive file titles such as "Toddler Rape.avi" (Lane), as well as patently obvious content such as infants with an adult erect penis in their mouths.

The evidence of Defendants' possession of, and access with intent to view, child pornography is probative of their interest in seeking to produce a live transmission of Victim-1 being sexually abused and seeking to receive child pornography through "Application A." Therefore, it is more likely that Defendants were, in fact, responsible for the live abuse of Victim-1 (as to Lane), and the receipt of other child pornography (as to all defendants). Because Defendants' possession of, and access with intent to view, child pornography and, thus, sexual interest in

children is relevant, the third prong of the Rule 414 analysis has been met.

**d. <u>The probative value of the evidence is not substantially outweighed by a risk of undue prejudice.</u>**

"Evidence admissible under Rule 414 must also meet the requirements of other provisions of the Federal Rules of Evidence, including Rule 403." *United States v. Carino*, 368 F. App'x 929, 929 (11th Cir. 2010). Therefore, in order to exclude Rule 414 evidence, the Court must find that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See McGarity,* 669 F.3d at 1244 n.32.

In the context of Rule 414, courts have adjusted the Rule 403 analysis based on the policies that weigh strongly in favor of admitting a defendant's prior acts of child molestation. In this case, the Rule 403 balancing weighs heavily in favor of admitting that the Defendants' possessed child pornography or attempted to access child pornography.

The Third Circuit's decisions in *Johnson* and *Merz* are illustrative of the proper application of the Rule 403 balancing test in the context of Rule 414. *See Johnson*, 283 F.3d at 155; *see also Merz*, 2010 WL 3965856 at *4-5. In contrast to the general rule precluding the use of propensity evidence underlying Rule 404(b), Rule 414 evidence can properly be admitted as propensity evidence without being

unduly prejudicial under Rule 403. Thus, the tendency of evidence of past sexual offenses to show the disposition of the defendant to commit the charged offense enhances the "probative value" side of the Rule 403 balance and weighs in favor of admission – not exclusion. *See United States v. Bentley*, 475 F. Supp. 2d 852, 859-60 (N.D. Iowa 2007) ("[T]he very purpose of Rule 414 evidence is to show propensity. In other words, because propensity evidence is admissible under Rule 414, this is not *unfair* prejudice.") (citations omitted) (emphasis in original); *see also United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) (evidence of child molestation is "not unfairly prejudicial in Sebolt's case"); *United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) ("Because propensity evidence is admissible under Rule 414, this is not unfair prejudice."); *LeCompte*, 131 F.3d at 770 (finding the district court erred in excluding evidence on the basis of a "unique stigma" associated with child molestation since "[t]his danger is one that all propensity evidence in such trials presents. It is for this reason that the evidence was previously excluded, and it is precisely such holdings that Congress intended to overrule.")

Importantly, the Third Circuit has held that "a district court should personally examine challenged evidence before deciding to admit it under Rule 403." *United*

*States v. Cunningham*, 694 F.3d 372, 386 (3d Cir. 2012). "Especially in child pornography cases," the Third Circuit cautioned "that obligation cannot be ignored because the images are inherently vile, obscene, and repulsive, and the aggregate risk of unfair prejudice [is] tremendous. Of course, the court may still permit the government to show such images to the jury, even when the defendant offers to stipulate that they contain child pornography." *United States v. Fritz*, 643 F. App'x 192, 193 (3d Cir. 2016) (citations and quotations omitted). For this reason, the United States will submit the relevant exhibits depicting child pornography to the Court for *in camera* inspection; they were shown to the defense back in September 11, 2017.

The Fifth Circuit held other acts do "not have to be similar in every respect to the charged offense. Rather the evidence need only be probative of some element of the charged offense." *Moore*, 425 F. App'x at 352; *see also United States v. Caldwell*, 586 F.3d 338, 345 (5th Cir. 2009) (affirming admission of adult pornography in child pornography prosecution to show knowledge of computer program used for both); *United States v. Dillon*, 532 F.3d 379, 389 (5th Cir. 2008) (affirming that admission of testimony by a prior act victim that defendant-officer *offered* to fix her tickets for "$150 or sex" was probative in trial regarding officer

having engaged in nonconsensual sex with two other victims).

Additionally, Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and **the balance should be struck in favor of admissibility**." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (discussing Rule 403 balancing test in Rule 404(b) context) (citation and quotation marks omitted) (emphasis added). Indeed, "Rule 403 requires a court to look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.*; *see also United States v. Merz*, 396 F. App'x 838, 843 (3d Cir. 2010) ("If the prior offenses are demonstrated with specificity and are sufficiently similar to the type of sexual assault allegedly committed by the defendant, . . . [then] Rule 414 provides a presumption in favor of their admission.")

In applying Rule 403's balancing test to Rule 414 evidence, the Court should balance the probative value against the potential for unfair prejudice in such a way as to allow Rule 414 its intended effect. *See United States v. Mound*, 149 F.3d 799, 800-01 (8th Cir. 1998). In other words, in determining the admissibility of the evidence offered under Rule 414, the district court is obligated to take into account Congress's policy judgment that Rule 414 evidence is "exceptionally probative" of

a defendant's sexual interest in children. *See Mound*, 149 F.3d at 801. Rule 403 requires that probative evidence be excluded only where the danger of unfair prejudice "substantially outweighs" the probative value. Thus, the remedy is "extraordinary," and should be applied sparingly; the balance should be struck in favor of admissibility. *See United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990); *accord, United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980); *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978). Further, a "trial judge's rulings under Rule 403 are rarely disturbed on appeal unless there is a clear showing that the judge abused his discretion." *United States v. Clifford*, 704 F.2d 86, 89 (3d Cir. 1983). "If judicial self-restraint is ever desirable, it is when a [Federal] Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *United States v. Universal Rehabilitation Services (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (*en banc*).

The Third Circuit has specifically addressed the operation of Rule 414 in the context of a child pornography case. *See United States v. Merz*, 396 F. App'x 838 (3rd. Cir. 2010). The Court affirmed the admission of the defendant's two prior child molestation convictions, determining that their admission did support a propensity inference because "they involved children of the same age as children

in the pornography at issue" despite the prior offense being thirteen years earlier due to time the defendant spent incarcerated. *Id.*

Put differently, the Third Circuit has explained that "[i]n these archetypal cases, where the propensity inference that can be drawn from the past act evidence is greatest, Congress surely intended for the probative value of the evidence to outweigh its prejudicial effect, and, conversely, did not want Rule 403 factors such as undue delay, waste of time, confusion of the issues, etc., to justify exclusion." *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 156 (3d Cir. 2002). Indeed, "[w]here the Government can show a past offense with specificity and the act is sufficiently similar to the act with which the defendant is charged, there is a presumption in favor of admissibility of Rule 414 evidence." *United States v. Maurizio*, No. CRIM. 3:14-23, 2015 WL 5177821, at *4 (W.D. Pa. Sept. 4, 2015) (citing *Elk Lake* at 156.)

The Third Circuit identified the following factors as relevant when weighing admissibility under Rule 414: "the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim." *Elk Lake Sch. Dist.*, 283 F.3d at 156 (quoting *United States v. Guardia,* 135 F.3d 1326, 1331 (10th Cir. 1998)); *see also Merz*, 396 F. App'x at 843 (same).

The Third Circuit, as well as other circuits, has often found that even after a Rule 403 analysis, images and videos of child pornography are not unfairly prejudicial. For example, in *Merz*, the Third Circuit affirmed the admission of the defendant's conviction from 13 years before the charged offense. 396 F. App'x at 843. The Court of Appeals observed that the prior offenses involved children of the same age as the children in the pornography at issue in that case, and that the temporal proximity was not as significant as it seemed because the defendant had been incarcerated for much of those 13 years. Similarly, the *Merz* court found that the number of images and videos was "highly probative" that the defendant's "conduct was done intentionally or knowingly." *Id*. at 844.

Here, the images and videos the United States intends to introduce were all possessed within the timeframe of the conspiracy, and thus pose no temporal proximity problem at all. Likewise, informing the jury that a defendant possessed multiple images of prepubescent child pornography is "highly probative" of the knowing and intentional nature of that defendant's actions on July 22, 2015, as well as other dates within the timeframe of the conspiracy where these defendants were seeking to access, view and live stream child pornography. That is, the United States intends to introduce numerous instances of the defendants engaged in online chat

communications on "Application A" that are very similar in nature to the chats observed in real time on July 22, 2015. To the extent the defendants seek to argue to the jury that the United States cannot prove what was happening on screen during those other chat communications, the possession of prepubescent child pornography will be highly probative of the United States' theory that the defendants were seeking child pornography on those other occasions, just as they were on July 22, 2015.

When faced with this decision previously, a neighboring district court admitted "highly prejudicial" evidence due to its "highly probative" nature. *See United States v. Prawdzik*, No. 07-40-03, 2008 WL 3983811, at *4 (E.D. Pa. Aug. 25, 2008), *aff'd*, 484 F. App'x 717 (3d Cir. 2012). The district court determined evidence of hands-on sexual abuse was "highly prejudicial" yet not unfairly prejudicial because of the "highly probative" value it had for showing the defendant's "propensity to commit sexual crimes against children." *Id*.

Here, each of the defendants is charged with conspiring to receive child pornography and conspiring to post a notice or advertisement seeking to receive child pornography. That they each possessed child pornography of the type (prepubescent) sought on July 22, 2015, as well as other occasions evidenced in the "Application A" chat logs from each defendant's devices, is highly probative of their

propensity to commit these sexual crimes involving children. Furthermore, such evidence is highly probative on the issue of whether the defendants "mistakenly" or "accidentally" encountered the child pornography streamed in the "Application A" rooms. The United States anticipates the defendants may argue they cannot control what other users in "Application A" stream to the entire online chat room. However, the jury's evaluation of that attempt at exculpation will be substantially informed by the "highly probative" fact that each defendant possessed multiple images and files relating to child pornography activity for extend periods of time pre- and post-July 22, 2015.

Others circuits have similarly found Rule 403 satisfied in admitting Rule 414 evidence. For example, the Tenth Circuit affirmed the admission of the defendant's prior state conviction for possession of child pornography in his federal trial for receipt of child pornography. *See United States v. Sturm*, 673 F.3d 1274, 1285 (10th Cir. 2012). The *Sturm* Court rejected the defendant's argument that the prior conviction was merely probative of his propensity to be "interested in and/or possess child pornography." *Id*. The *Sturm* court explained that such a reading of Rule 414 was too myopic, and the Rule specifically allows such prior evidence to be considered "for its bearing on *any* matter to which it is relevant." *Id*. (quoting Rule

414(a).)

Similarly, the First Circuit affirmed the admission of Rule 414 evidence of the defendant's possession of child pornography conviction from 10 years before his 2015 federal trial for possession of child pornography. The Court found that the fact that the prior conduct was similar to the charged conduct "enhanced its presumed probativeness." *United States v. Majeroni*, 784 F.3d 72, 76 (1st Cir. 2015).

Likewise, the Eleventh Circuit has regularly found that the probative value of Rule 414 evidence is not substantially outweighed by the danger of unfair prejudice. In 2010, the Eleventh Circuit found in *Carino* that the probative value of evidence that the defendant molested his sister when they were young was not substantially outweighed by any prejudice to his trial for receipt and possession of child pornography. *Carino*, 368 F. App'x at 929. Similarly, in 2012, the Eleventh Circuit in *Woods* found that the probative value of evidence that the defendant molested his niece was not substantially outweighed by any prejudice to his trial for receipt and possession of child pornography. *Woods*, 684 F.3d at 1065. In *McGarity*, the Eleventh Circuit rejected the defendant's claim that prejudice in his child pornography trial substantially outweighed the probative value of evidence that he had fondled and touched his two-year-old daughter. *McGarity*, 669 F.3d at 1243-45.

In *Levinson*, the Eleventh Circuit held that the probative value of evidence that the defendant had participated in online sexual chats with minors, possessed child pornography, and sexually abused his daughter was not substantially outweighed by unfair prejudice in the defendant's trial for coercion and enticement of a minor. *Levinson*, 504 F. App'x at 827-28.

Defendant's conduct here is at least as probative, and no more prejudicial, than the conduct in *Merz, Prawdzik, Sturm*, *Majeroni*, *Carino*, *Woods*, *McGarity*, and *Levinson*. The danger of unfair prejudice does not outweigh, much less substantially outweigh, the probative value of evidence of Defendants' possession of, and access with intent to view, child pornography offenses. Thus, the final prong of the Rule 414 analysis has been met.

## III. Defendants' Prior Acts of Child Molestation Are Alternatively Admissible Pursuant to Federal Rule of Evidence 404(b)

In the alternative, should this Court conclude that one or more of the proposed exhibits do not rise to the level of "child molestation" as defined in Rule 414 sufficient for admission as propensity evidence, the United States respectfully requests a pre-trial ruling that such instances be admissible under the more limited function of Rule 404(b) as evidence of Defendants' motive, opportunity, and intent to commit the offenses alleged in the Superseding Indictment. Accordingly, even if

the Count determines that the evidence is not admissible under Rule 414, the images of child pornography and related searches recovered from the devices of the Defendants' should be admitted for the more limited purposes of Rule 404(b).

**CONCLUSION**

For the foregoing reasons, this Court should admit, pursuant to Rule 414, the United States' proposed evidence regarding Defendants' other instances of child molestation as permitted by Rule 414. In the alternative, this evidence should be admitted under Rule 404(b).

David J. Freed
United States Attorney

January 5, 2017 By: ____/s/ Meredith Taylor ________________
Meredith Taylor
Assistant U.S. Attorney

January 5, 2017 ____/s/ Austin M. Berry ________________
Austin M. Berry
Trial Attorney

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **NO. 1:16-CR-82** |
| | ) | |
| **v.** | ) | **(Judge Kane)** |
| | ) | |
| **(3) SCOTT LANE, a.k.a. "NYC Perv,"** | ) | |
| **(8) WILLIAM STAPLES, a.k.a., "Bill** | ) | |
| **Simpson," and** | ) | |
| **(10) DYLAN HEATHERLY, a.k.a.,** | ) | |
| **"Daniel Sotherland"** | ) | |
| | ) | **(Electronically Filed)** |
| **Defendants.** | ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is an employee in the Department of Justice and is a person of such age and discretion to be competent to serve papers.

That this 5th day of January 2018, he served a copy of the attached

**UNITED STATES' MOTION IN LIMINE TO ADMIT EVIDENCE OF DEFENDANTS' PRIOR CHILD MOLESTATION OFFENSES PURSUANT TO FEDERAL RULES OF EVIDENCE 414 AND 404(B)**

by electronic means by sending a copy to the e-mail addressees stated below:

**Gerald A. Lord**
Lord Law, LLC
45 N. Queen St., York, PA 17403

Phone: (717) 850-2274
Fax: (717) 850-2911
glordlaw.com
*Counsel for Defendant Scott Lane*

**Jason Asbell**
Gibbel Kraybill & Hess LLP
2933 Lititz Pike
PO Box 5349
Lancaster, PA 17606
Phone 717-291-1700
Fax 717-291-5547
jasbell@gkh.com
*Counsel for Defendant William Staples*

**Robert J. Daniels**
Killian & Gephart, LLP
218 Pine Street
Harrisburg, PA 17101
Phone: 717-232-1851
Fax: 717-238-0592
rdaniels@killiangephart.com
*Counsel for Defendant Dylan Heatherly*

/s/ Austin M. Berry
Austin M. Berry